UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

N° 05-CV-3933 (JFB)

———————————

JAMES DESIO,

Petitioner,

VERSUS

GARY TERBUSH, ACTING DEPUTY WARDEN, GREEN HAVEN CORRECTIONAL FACILITY

Respondent.

———————————

MEMORANDUM AND ORDER
May 3, 2007

———————————

JOSEPH F. BIANCO, District Judge:

James Desio (hereinafter "petitioner" or "Desio") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. In a judgment rendered on March 4, 2003 following Desio's guilty plea in the Supreme Court of the State of New York, Queens County, Desio was convicted of third-degree robbery. He was sentenced to four consecutive terms of two to six years imprisonment.

Desio challenges his conviction on the grounds that he was denied effective assistance of appellate counsel. For the reasons set forth below, the petition is denied.

I. BACKGROUND

A. The Facts

The following facts are taken from the instant petition and underlying record.

On September 3, 2000, Desio robbed four gas stations in a twenty-four hour period. He was charged in four different indictments with first-degree robbery and related crimes. Desio's trial counsel, Anthony V. Lombardino, Esq., negotiated a plea bargain for Desio. The terms of the plea bargain were outlined at the plea proceeding on November

27, 2001, and were not set down in writing.

### 1. The Plea Proceeding

Initially, the judge summarized the plea bargain, wherein Desio would plead to four counts of third-degree robbery, and receive a sentence of five years of probation, "with the understanding that the sentence would be a probationary sentence" dependent upon (1) Desio leading "a law-abiding life for the entire probationary period" and (2) his completion of a residential substance abuse counseling program. (P. at 3-4.)[1] The prosecutor, Neal Gitin, added:

> [I]f there is a Violation of Probation . . . the [c]ourt will sentence the defendant to two to six years consecutive on all four of the indictments, thereby leading to a definitive sentence of eight to 24. I would like the [c]ourt to ask the defendant if that is acceptable and he understands that is a condition.

(P. at 3.) The judge then asked Desio, "do you understand?" (P. at 4.) To which Desio replied, "Yes, I do." (*Id.*) This exchange between the judge and Desio (designated, respectively, as "the Court" and "Defendant" in the transcript) followed:

> THE COURT: I want you [Desio] to understand the full scope of what the probationary sentence is because it's five years. If you screw up at any point during the five year period it's two to six years incarceration on each indictment, consecutive, for a total of eight to 24. Do you understand?
>
> DEFENDANT: I understand.
>
> THE COURT: Do you want to go forward with this plea?
>
> DEFENDANT: Yes, I do.

(P. at 4-5.)

The judge then began the plea colloquy. First, the judge told Desio that, during the plea proceeding, if there was anything Desio did not understand or wanted the judge or his lawyer to explain to him, Desio should alert the court. (P. at 6-7.)

Next, the judge had the following exchange with Desio regarding Desio's obligations prior to sentencing, and the consequences of breaching those obligations:

> THE COURT: You have to stay out of trouble between today and January 9th [the original sentencing date]. . . . If you violate any of the conditions about staying out of trouble between today and January 9th, . . . the two to six year period Mr. Gitin referred to will apply. If you get in trouble or don't come back to court it's two to six years. If . . . you stay out of trouble between now and January 9th, you will get the probationary sentence with the counseling program and special conditions. If I do sentence you on January 9th to the probationary period and you violate any term or condition of that Probation you face two to six years in jail consecutively

---

[1] Hereinafter, "P" refers to the transcript of the plea proceeding on November 27, 2001; "S" refers to the transcript of the sentencing proceeding on March 4, 2003; and "Tr." refers to the respective transcripts of the proceedings on the dates indicated.

on each of the four indictments. Do you understand all of the conditions that I have outlined, sir?

DEFENDANT: Yes.

THE COURT: Do you have any questions that you want to ask Mr. Lombardino or do you want to ask me at this point?

DEFENDANT: No.

THE COURT: Are you sure you understand the rights you are giving up and the conditions of the proposed sentence[,] the probationary sentence?

DEFENDANT: Yes.

(P. at 8-9.) Desio then pled guilty to four counts of robbery in the third-degree.

2. Desio's Arrest Prior to Sentencing

On December 10, 2002, Desio was arrested for the theft of an automobile belonging to his girlfriend.[2] Subsequently, Desio was indicted for third-degree criminal possession of stolen property, fourth-degree grand larceny, and other related charges. On March 4, 2003, Desio was arraigned on the grand-larceny indictment before the same judge that had taken his plea to the robbery indictments.[3] (S. at 2-3.)

3. The Sentencing Proceeding

On March 3, 2003, subsequent to Desio's arraignment on the grand larceny indictment, Desio was sentenced on the robbery indictments. The prosecutor argued that Desio's post-plea indictment, and the conduct underlying that indictment, constituted a violation of the conditions imposed upon Desio at the plea proceeding. (*Id.* at 4.) The prosecutor requested that Desio be sentenced, according to the terms of the plea agreement, to "two to six consecutive, four times." (*Id.*)

Desio's counsel was given the opportunity to present arguments regarding Desio's sentence. Counsel acknowledged that "there was an agreement" between Desio and the State regarding the consequences of a violation of the conditions set forth at the plea proceeding. (*Id.* at 5.) However, he argued that the judge, in his discretion, should "look behind the agreement" and not "sentence this man to four consecutive sentences" of two-to-six years because it would be "overly harsh," especially where Desio's actions were, according to his attorney, the product of Desio's addiction to drugs. (*Id.* at 5-7.) Desio was also afforded an opportunity to address the court; he cited his drug addiction as the reason for his problems. (*Id.* at 8.) Ultimately, the judge sentenced Desio to "two to six years consecutive" on each of the four

---

[2] According to the State, petitioner stole his girlfriend's car, and removed and sold the car's radio as well as some "computer components" that were in the car. (S. at 4.) However, according to petitioner's trial counsel, petitioner's girlfriend "gave him" the car. (*Id.* at 5.)

[3] Subsequent to Desio's sentencing on the robbery indictments, Desio pled guilty to grand larceny and was sentenced to a term of imprisonment of one-year, to be served concurrently with the robbery sentences. (Feb. 24, 2004 Tr., at 6.) Desio reserved the right to withdraw his plea to the grand larceny charge if the robbery convictions were reversed on appeal. (*Id.*)

3

indictments. (*Id.*)

## B. Procedural History

Desio appealed the judgment of conviction to the Appellate Division, Second Department. Desio's attorneys – one of whom, Mr. Lombardino, represented Desio at the plea and sentencing proceedings – raised two claims: (1) Desio's waiver of appeal was unenforceable; and (2) his sentence was excessive. In an opinion dated March 15, 2004, the Appellate Division affirmed petitioner's conviction, finding that, although the waiver of appeal was unenforceable, Desio's sentence was not excessive. *See People v. Desio*, 793 N.Y.S.2d 772 (N.Y. App. Div. 2004). Specifically, the court found that "defendant was aware of the enhanced sentence he would receive if he violated the terms of the plea agreements." *Id.* On June 24, 2004, the Court of Appeals denied Desio leave to appeal the Appellate Division's decision. *People v. Desio*, 816 N.E.2d 200 (N.Y. 2004).

On April 2, 2004, having retained new appellate counsel, Desio moved for reargument of his direct appeal, on the grounds that his appellate attorneys had provided ineffective assistance by failing to raise three claims: (1) that his sentence violated the terms of the plea agreement; (2) that the procedure used by the trial court to determine that Desio had breached the conditions set forth at the plea proceeding had violated Desio's due process rights; and (3) that his trial counsel was ineffective by failing to contemporaneously object to these alleged errors. On May 26, 2004, the Appellate Division denied Desio's motion for reargument. (Pet.'s Ex. D.)

On May 5, 2004, Desio moved for an order vacating the judgment of conviction pursuant to N.Y. Crim. Proc. Law §§ 440.10 and 440.20. Desio asserted four grounds in support of his motion: the three grounds raised in his motion for reargument as well as a claim for ineffective assistance of appellate counsel on his direct appeal. On May 26, 2004, the trial court denied Desio's motion. On August 4, 2004, the Appellate Division denied Desio leave to appeal the denial of his Section 440 motion. (Pet.'s Ex. G.)

On February 10, 2005, Desio sought a writ of error *coram nobis* before the Appellate Division, on the ground that he received ineffective assistance of appellate counsel on his direct appeal. On May 2, 2005, the Appellate Division denied Desio's motion, finding that Desio "has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Desio*, 793 N.Y.S.2d 772 (N.Y. App. Div. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004)). On June 28, 2005, the Court of Appeals denied Desio leave to appeal the Appellate Division's decision. *People v. Desio*, 834 N.E.2d 1266 (N.Y. 2005).

Desio filed the instant petition on July 5, 2005. This case was reassigned to the undersigned on April 12, 2006. Oral argument was held on April 18, 2007.

## II. DISCUSSION

### A. Standard of Review

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554.

"Clearly established Federal law" is comprised of "the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review for a state court's ruling on the merits of a claim: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). .

### B. Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey,* 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the standard established in *Strickland v. Washington,* 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both (1) that appellate

5

counsel's performance was objectively unreasonable, and (2) that, absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful. *See Mayo,* 13 F.3d at 533-34; *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001). Generally, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (citing *Jones,* 463 U.S. at 750-54 (1983)); *see also Strickland*, 466 U.S at 690-91 (noting that appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable"). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751-52); *accord Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir. 2001). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones,* 463 U.S. 745,; *accord Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir. 1998). Instead, as the Second Circuit has observed:

> [T]he district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985))

Here, the brief submitted by petitioner's appellate counsel to the Appellate Division was a well-reasoned, seventeen page document, stressing the two points counsel apparently deemed most likely to succeed. Specifically, as noted *supra*, appellate counsel argued that (1) Desio's waiver of appeal was unenforceable, and (2) the sentence imposed was excessive. In the Appellate Division, Desio prevailed on the first claim but not the second. In the instant petition, Desio argues that appellate counsel was ineffective for failing to raise several additional claims, including that (1) petitioner's sentence violated the terms of the plea agreement; (2) the procedure used by the trial court to determine that petitioner had breached the conditions set forth at the plea proceeding violated his due process rights; (3) the condition that petitioner must "stay out of trouble" prior to sentencing violated his due process rights; and (4) petitioner received ineffective assistance of trial counsel. For the reasons set forth below, this Court finds that petitioner's claim as to appellate counsel's ineffectiveness is without merit, and, thus, that the state court did not unreasonably apply federal law in rejecting petitioner's claim.

1. The Plea Agreement

Petitioner argues that appellate counsel was ineffective for failing to argue that petitioner was not sentenced in accordance with the plea agreement. For the reasons set forth below, the Court finds that counsel's failure to raise the plea agreement claim did not violate petitioner's right to effective assistance of appellate counsel.

In an action alleging violation of a plea agreement, "the dispositive question . . . is what the parties to this plea [agreement] reasonably understood to be the terms of the agreement." *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982) (quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979)); *see also United States v. Rivera*, 954 F.2d 122, 124 (2d Cir. 1992) (stating that, while "criminal sentencing proceedings are not the same as civil contract disputes, . . . we [the Court] look to what the parties to [the] plea agreement reasonably understood to be the terms of the agreement") (citing *Paradiso*, 689 F.2d at 31) (internal quotation marks omitted); *United States v. Salcido-Contreras*, 990 F.2d 51, 52 (2d Cir. 1993) ("[W]e interpret plea agreements according to principles of contract law."). Thus, the crucial issue here is whether the imposed sentence "comport[s] with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained," *Paradiso*, 689 F.2d at 31, resolving any ambiguity in the agreement in favor of the defendant (*i.e.*, the petitioner). *United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999); *Guzman v. Couture*, No. 99 Civ. 11316 (RMB) (HBP), 2003 U.S. Dist. LEXIS 1004, at *46-*47 (S.D.N.Y. Jan. 3, 2003); *see People v. Cataldo*, 349 N.E.2d 863, 864 (N.Y. 1976) ("Compliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof."). "That question is one of fact which must be answered by objective proof on the record." *Nix v. United States*, 111 F. Supp. 2d 186, 188 (E.D.N.Y. 2000) (quoting *Gammarano v. United States*, 732 F.2d 273, 275-76 (2d Cir. 1984)); *see Grillo v. Scully*, 90 Civ. 7970 (PKL), 1993 U.S. Dist. LEXIS 14899, at *9 (S.D.N.Y. 1993).

Here, the Court finds that, on the basis of the objective proof on the record and resolving any ambiguity in the agreement in favor of petitioner, the imposed sentence comports with the reasonable understanding and expectations of petitioner as to the sentence for which he had bargained. Specifically, the Court concludes that the original plea agreement did not contain a third alternative sentence, applicable to petitioner if he violated the condition regarding his conduct prior to sentencing (namely, the condition that petitioner must "stay out of trouble" during the interval between the plea and sentencing proceedings (hereinafter, the "condition")). (P. at 3-4.) Instead, the transcript of both the plea and sentencing proceedings clearly indicates that the parties reasonably understood the agreement to include only two sentencing alternatives – the five-year probationary sentence and the four consecutive terms of two to six years of incarceration applicable upon petitioner's breach of a condition imposed by the Court.

As noted *supra*, at the beginning of the plea proceeding, the prosecutor, Mr. Gitin, stated that "if there is a Violation of Probation . . . the [c]ourt will sentence the defendant to two to six years *consecutive* on all four of the indictments, thereby leading to a definitive sentence of eight to 24," and then asked the court to inquire as to petitioner's

7

understanding of those terms. (P. at 3 (emphasis added).) Petitioner indicated that he understood those terms.

Next, the judge made clear that, during the post-plea/pre-sentencing period: "You [petitioner] have to stay out of trouble." (P. at 8.) The judge then explained that: "If you violate any of the conditions about staying out of trouble between today and [the date of sentencing], . . . the two to six year period Mr. Gitin referred to will apply." (P. at 9.) As such, the judge clearly indicated that the condition applied during the post-plea/pre-sentencing period, and that a violation of the condition would result in the imposition of the same four *consecutive* terms of two to six years of imprisonment referred to by Mr. Gitin only moments earlier, in connection with a probation violation.

Furthermore, at the sentencing proceeding, the judge, the prosecutor, and petitioner's counsel each acknowledged that, pursuant to the terms of the plea agreement, petitioner's breach of the condition prior to sentencing subjected him to four consecutive terms of two to six years of incarceration.[4] (*See* S. at 4-7.) In addition, the Court notes that Desio was afforded the opportunity to address the trial court at the sentencing proceeding, and did not question whether the sentence he was about to receive comported with the terms of the plea agreement.

---

[4] The Court notes that petitioner's brief on direct appeal, which was co-authored by petitioner's trial counsel, stated that the trial court "did inform the defendant that if he violated his Probation, he would receive consecutive terms of imprisonment of two to six years on each indictment." (Br. for Def.-App., at 6.)

Nevertheless, petitioner argues that the plea agreement mandated four *concurrent* terms of two to six years imprisonment for a pre-sentencing, as opposed to a post-sentencing, breach of the condition. In support, petitioner points out that, at one instance during the plea proceeding, the judge failed to specifically state that a pre-sentence breach of the condition would result in four consecutive terms of imprisonment, stating, instead, that, prior to sentencing, "[i]f you get in trouble or don't come back to court it's two to six years." (P. at 9.) According to petitioner, the absence of the term "consecutive" from the judge's remark contrasts with the judge's next remark, wherein he stated that the term of imprisonment for a post-sentencing breach would be "two to six years in jail consecutively on each of the four indictments." (*Id.*)

The Court rejects petitioner's argument. At no point during the plea or sentencing proceedings did any of the parties use the word "concurrent," or otherwise indicate that they reasonably understood the plea agreement to include a sentence of concurrent terms of incarceration. Instead, as set forth above, the judge, the prosecutor, and petitioner's counsel repeatedly indicated that the terms of the agreement included two – and only two – sentencing alternatives: a probationary sentence or, upon breach of a condition of the plea agreement, four consecutive terms of two to six years imprisonment. Moreover, moments prior to the judge's statement at the plea proceeding that petitioner points to in support of his claim, the judge had specifically characterized the sentence for a pre-sentencing breach as the "two to six year period Mr. Gitin referred to" (P. at 9) – that is, the four terms of "two to six years consecutive" that Mr. Gitin had

described at the beginning of the proceeding regarding a probation violation and of which petitioner had indicated his understanding (P. at 3-4). Thus, under the circumstances of this case, the judge's failure in a single instance to explicitly characterize the term of imprisonment following a breach by petitioner as including four "consecutive" terms does not reasonably support the understanding of the agreement urged by petitioner, nor does it create an ambiguity regarding whether a third sentencing alternative exists. *See People v. Rhymer*, 769 N.Y.S.2d 879 (N.Y. App. Div. 2004) ("The plea agreement was not ambiguous[,] hence, there were no ambiguities to be resolved in defendant's favor.") (internal citations omitted).

Therefore, because the sentence imposed upon petitioner comports with the reasonable understanding of the sentence for which petitioner had bargained, the claim regarding the alleged breach of the plea agreement was not a "significant and obvious" ground for appeal that was "clearly stronger than those [issues] presented" on appeal . *Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)); *see also Texidor v. Artus*, No. 06 Civ. 7173 (RJH) (JCF), 2007 U.S. Dist. LEXIS 17384, at *9-*10 (S.D.N.Y. March 14, 2007). Accordingly, the Court finds that it was not objectively unreasonable for petitioner's appellate counsel to omit the claim on direct appeal.

Furthermore, even assuming *arguendo* that appellate counsel's failure to raise the plea agreement issue was objectively unreasonable, petitioner has failed to show that, absent counsel's allegedly deficient performance, there was a "reasonable probability" that his appeal would have been successful before the state's highest court. *Mayo*, 13 F.3d at 534 (quoting *Claudio v. Scully*, 982 F.2d at 803 (2d Cir. 1992)) (internal quotation marks omitted). The New York Court of Appeals, like the Second Circuit, applies an objective meaning standard to determine the terms of a plea agreement. *See Cataldo*, 349 N.E.2d at 864 ("Compliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof."); *People v. Reyes*, 561 N.Y.S.2d 998, 999 (N.Y. App. Div. 1990) (finding a plea ambiguous where it is not "susceptible to but one interpretation") (citation and quotations omitted); *People v. Morales*, 559 N.Y.S.2d 822, 823 (N.Y. App. Div. 1998). Because, as discussed *supra*, the plea agreement in this case unambiguously included only two sentencing alternatives, there is no reasonable probability that the plea agreement claim would have been successful before the New York Court of Appeals. This Court therefore declines to find that the state court unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.[5]

---

[5] As noted *supra*, in denying petitioner's *coram nobis* application, the Appellate Division held that Desio had "failed to establish that he was denied the effective assistance of appellate counsel," *Desio*, 793 N.Y.S.2d at 772, and cited *Jones*, 463 U.S. 745, and *Stultz*, 810 N.E.2d 883, in support of that holding. However, in *Jones*, the Supreme Court held that "the Ninth Circuit had erred by introducing a *per se* rule that an appointed appellate counsel must raise every nonfrivolous issue requested by the client lest he be found to have rendered ineffective assistance." *Aparicio*, 269 F.3d at 93 n.7 (characterizing the holding of *Jones*); *see Jones*, 463 U.S. at 754 ("[T]he only question presented by this case is whether a criminal defendant has a constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests."). As such, *Jones* is inapposite to petitioner's claims because

9

## 2. The Procedure Used by the Sentencing Court

Petitioner also argues that appellate counsel was ineffective for failing to challenge the procedure followed in the trial court to determine whether Desio violated a condition set forth at the plea proceeding. Specifically, petitioner asserts that appellate counsel should have argued that the trial court erred in not holding a hearing wherein the state had to prove by a preponderance of the evidence that petitioner had breached the condition. For the reasons set forth below, the Court finds that, as of the time that appellate counsel argued the direct appeal, it was not objectively unreasonable for appellate counsel to omit such a claim.

Prior to February 2004, the pronouncements of New York appellate courts, including the Court of Appeals and intermediate appellate courts, did not indicate that sentencing courts were required to conduct a hearing and apply a preponderance standard to determine a breach of a post-plea/pre-sentencing condition. In *People v. Outley*, the New York Court of Appeals found that, to comply with the constitutional guarantee of due process, a sentencing court "must assure itself that the information upon which it bases the sentence is reliable and accurate." 610 N.E.2d 356, 360 (N.Y. 1993) (citing *Mempa v. Rhay*, 389 U.S. 128, 133 (1967), and *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). Pursuant to *Outley*, while "proof that [the] defendant actually committed the post plea offense which led to the arrest [is] not necessary," a sentencing court must conduct an inquiry "of sufficient depth . . . so that the court can be satisfied – not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." 610 N.E.2d at 361.

According to petitioner, the Second Circuit's decision in *Torres v. Berbary*, 340 F.3d 63, 71 (2d Cir. 2003), imposed an additional requirement for sentencing courts – that "due process in sentencing requires at least a showing by a preponderance of evidence to resolve disputed factual issues."[6]

---

petitioner did not assert that he made any requests to his appellate counsel regarding the claims that should have been raised on appeal. However, in *Stultz*, the New York Court of Appeals adopted a "meaningful representation" standard for the performance of appellate counsel, and noted that the standard "provide[s] greater protection" than that enunciated by the Supreme Court in *Strickland*. *See Stultz*, 810 N.E. 2d at 888 n.12. Previously, the "meaningful representation" standard had been applied by New York courts to claims regarding the performance of trial counsel. As applied in that context, the Second Circuit has repeatedly found that the standard is "not 'diametrically different, opposite in character or nature, or mutually opposed' to the standard articulated in *Strickland*." *See Loliscio v. Goord*, 263 F.3d 178,193 (2d Cir. 2001); *see also Eze v. Senkowski*, 31 F.3d 110, 122-24 (2d Cir. 2003); *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001); *but see Henry v. Poole*, 409 F.3d 48, 70 (2d Cir. 2005) (adhering to the precedents set in *Lindstadt* and *Loliscio* "that the NY Court of Appeals standard is not 'contrary to' *Strickland*," but noting, without taking up the question, that there may be some doubt as to the validity of those precedents). Accordingly, the Court finds that, in rejecting petitioner's claim regarding the performance of appellate counsel, the state court applied a rule that comported with Supreme Court precedent as set forth in *Strickland* and its progeny.

---

[6] The Court notes that *Torres* was decided by the Second Circuit on August 7, 2003, more than five months *after* the notice of appeal was filed in this case. However, argument on the direct appeal in

However, subsequent to the Court of Appeals' decision in *Outley* in 1993 and continuing after the Second Circuit's decision in , courts have found that a defendant's post-plea indictment on a new criminal charge, and the sentencing court's review of that indictment, constitutes a "legitimate basis" to conclude that defendant breached a condition of his sentence and, thus, comports with the requirements of due process. In other words, both before and after *Torres*, New York appellate courts have overwhelmingly rejected the claim that petitioner asserts should have been raised on appeal. *See, e.g., People v. Ricketts*, 811 N.Y.S.2d 103, 104 (N.Y. App. Div. 2006) ("We reject the defendant's contention that the court impermissibly enhanced his sentence. 'Since the defendant had been indicted, the court was assured that there was a legitimate basis for the new charges. Thus, the court properly exercised its discretion in imposing an enhanced sentence.'") (quoting *People v. Coleman*, 697 N.Y.S.2d 683 (N.Y. App. Div. 1999)), *leave to appeal denied*, 849 N.E.2d 981 (N.Y. 2006); *People v. Brandel*, 798 N.Y.S.2d 827 (N.Y. App. Div. 2005) ("[T]here is no merit to the contention of defendant that the court should have conducted a hearing on the issue whether he violated [a] condition [of his interim release] before imposing an enhanced sentence."), *leave to appeal denied*, 837 N.E.2d 739 (N.Y. 2005); *People v. Daymont*, 749 N.Y.S.2d 921, 922 (N.Y. App. Div. 2002) ("[T]he court examined the grand jury minutes underlying the indictments on the new charges against defendant and thus conducted a sufficient inquiry to determine 'the existence of a legitimate basis' for the new charges.") (quoting *Outley*, 610 N.E.2d at 361); *People v. Huffman*, 732 N.Y.S.2d 391 (N.Y. App. Div. 2001) ("The court conducted a sufficient inquiry when it examined the indictment setting forth a new criminal charge against defendant, thereby ascertaining 'the existence of a legitimate basis' for the new charge.") (quoting *Outley*, 610 N.E.2d at 361); *Coleman*, 697 N.Y.S.2d at 683 ("Since the defendant had been indicted, the court was assured that there was a legitimate basis for the new charges. Thus, the court properly exercised its discretion in imposing an enhanced sentence"); *People v. Smith*, 670 N.Y.S.2d 766 (N.Y. App. Div. 1998) ("The court properly enhanced its originally promised sentence on the basis of defendant's post-plea indictment for two rapes."); *People v. Santana*, 679 N.Y.S.2d 293 (N.Y. App. Div. 1998); *People v. Ruffin*, 617 N.Y.S.2d 333, 334 (N.Y. App. Div. 1994); *see also Coleman v. Rick*, 281 F. Supp. 2d 549, 560 (E.D.N.Y. 2003) (Weinstein, J.) ("[T]he legitimate basis for petitioner's arrest was satisfactorily established by virtue of the grand jury's return of an indictment against petitioner with respect to that incident."); *cf. People v. Valencia*, 819 N.E.2d 990, 991 (N.Y. 2004) (finding that a hearing was not necessary where the "defendant admitted that he committed acts that constituted violations of the plea agreement"). Thus, this Court finds that, notwithstanding the Second Circuit's decision in *Torres* and in light of the case law cited above, it was not objectively unreasonable for appellate counsel to conclude that, under the circumstances of this case, a claim raising the *Torres* issue was not "clearly stronger" than those actually presented. *See Mayo*, 13 F.3d at 533.

This conclusion – that appellate counsel's failure to argue the *Torres* issue fell within the standards of reasonably competent performance – is further supported by the fact

---

this case was held on February 23, 2004 – six months after *Torres* was decided.

11

that, following the Second Circuit's decision in *Torres*, courts have routinely declined to extend the hearing requirement and preponderance standard enunciated in *Torres* to cases where sentencing courts have relied on more competent forms of evidence. In *Torres*, the sentencing court relied solely upon "a single report [from a drug treatment center] replete with multiple levels of hearsay and speculation" in order to find that the defendant breached a post-plea/pre-sentencing condition. 240 F.3d at 71. By contrast, in the instant case, the sentencing court relied on the grand jury's return of an indictment against petitioner, and the sentencing court's subsequent inquiry into petitioner's position as to the validity of that indictment (wherein petitioner's trial counsel had an opportunity to dispute the facts underlying the indictment), to conclude that petitioner had breached the condition that he "stay out of trouble." Thus, because the evidence presented to the sentencing court in the instant case differs significantly from that in *Torres*, it was not objectively unreasonable for appellate counsel to conclude that a claim that sought to apply the *Torres* holding to the instant case was not "clearly stronger" than the claims actually presented.[7] *See Curtis v. Fischer*, 2004 U.S. Dist. LEXIS 18081, at *16-*17 ("The facts of *Torres*, however, are significantly different than those in the case at bar. [The defendant] was not discharged from his programs based on unsubstantiated allegations. . . . A hearing [prior to the imposition of an enhanced sentence] was unnecessary."); *Coleman*, 281 F. Supp. 2d at 26 ("[T]he legitimate basis . . . was satisfactorily established by virtue of the grand jury's return of an indictment against petitioner . . . – unlike the situation in *Torres*, where the court's factual determinations were apparently made solely on the basis of what the Court of Appeals deemed unreliable hearsay affidavits."); *Bennett*, 777 N.Y.S.2d at 289 ("[U]nlike the hearsay allegations offered in [*Torres*], in the instant case the showing that defendant is in violation of the plea agreement consists of the uncontroverted facts that defendant was rearrested prior to the . . . sentence date . . ., and that defendant was indicted on charges stemming from that rearrest.").

In sum, the above-cited cases distinguishing *Torres* by the unique circumstances presented therein, combined with the overwhelming number of pre- and post-*Torres* cases finding that the fact of a post-plea arrest and indictment is a legitimate basis for determining a breach of a pre-sentencing condition, demonstrate that

---

[7] The Court also notes that some courts have found that a post-plea indictment, by itself, satisfies the preponderance standard enunciated in *Torres*. *See Coleman*, 281 F. Supp. 2d at 560 ("Even under the preponderance standard set forth by the Court of Appeals for the Second Circuit [in *Torres*], petitioner's claim must fail. In the instant matter, the legitimate basis for petitioner's arrest was satisfactorily established by virtue of the grand jury's return of an indictment against petitioner with respect to that incident."); *Ricketts*, 811 N.Y.S.2d at 104 ("The defendant claims that the court failed to conduct an adequate inquiry into the validity of his post-plea arrest on an unrelated crime before imposing an enhanced sentence. . . . At sentencing, the court was informed that the defendant had been re-arrested and indicted by a Grand Jury. . . . We reject the defendant's contention that the court impermissibly enhanced his sentence."); *People v. Bennett*, 777 N.Y.S.2d 285, 289 (N.Y. Sup. Ct. 2004) ("[E]ven under the preponderance of the evidence standard set forth by the *Torres* court, in the instant case the legitimate basis for defendant's rearrest was satisfactorily established by defendant's indictment on charges stemming from that rearrest.").

appellate counsel's omission of the *Torres* issue was not objectively unreasonable and, as such, fell "within the wide range of reasonable professional assistance."[8] *Strickland*, 466 U.S. at 689.

Furthermore, even assuming *arguendo* that appellate counsel's failure to raise the *Torres* issue was objectively unreasonable, petitioner has failed to show that, absent counsel's allegedly deficient performance, there was a reasonable probability that his appeal would have been successful before the state's highest court. Following the Second Circuit's decision in *Torres*, the New York Court of Appeals has clearly pronounced that it continues to adhere to the procedure set forth in *Outley* rather than the *per se* hearing requirement and preponderance standard that petitioner asserts was established by *Torres*. *See People v. Valencia*, 819 N.E.2d 990, 991 (N.Y. 2004) ("[T]o satisfy due process, a sentencing court must, prior to imposing the prison alternative pursuant to a plea agreement, conduct an inquiry sufficient to conclude that a violation of the plea agreement occurred.") (citing *Outley*, 610 N.E.2d 356). As such, under the circumstances of this case, there was no reasonable probability that the claim that petitioner was entitled to a hearing and proof by a preponderance at sentencing would have been successful. This Court therefore declines to find that the state court

---

[8] The Court notes that this conclusion relates solely to the objective reasonableness of the performance of petitioner's appellate counsel, in light of the law at the time of the direct appeal and the relative strength of the issues actually presented on appeal versus that of the issues petitioner asserts should have been presented. Some federal district courts have concluded that the preponderance standard referenced in *Torres* was "unfounded" and contrary to Supreme Court precedent. *See Coleman*, 281 F. Supp.2d at 560 (characterizing the finding in *Torres* that due process requires proof by a preponderance to "resolve disputed factual issues" as a "logical leap . . . unfounded in the logic of the court's opinion . . . [and] also unsupported by Supreme Court precedent"); *Janick v. Superintendent*, 404 F. Supp. 2d 472, 484-85 (W.D.N.Y. 2005) ("With all due respect to the Second Circuit, I must agree with District Judge Weinstein's observation [in *Coleman*] that this conclusion is 'unfounded in the logic of the court's opinion.' . . . Furthermore, the Torres court's conclusion does not seem to be supported by Supreme Court precedent.") (quoting *Coleman*, 281 F. Supp.2d at 560); *see also DeJesus v. Senkowski*, No. 00 Civ. 7926 (RJH) (THK), 2006 WL 2707330, at *18 & n.10 (S.D.N.Y. Sep. 20, 2006) (limiting *Torres* to the "facts unique to that case"). However, although the Court need not reach that underlying issue in the instant petition, the Court notes that the district court cases disputing the validity of *Torres* provide additional support for the conclusion that appellate counsel's decision in the instant case not to raise the *Torres* issue was not objectively unreasonable. In any event, to the extent that petitioner suggests that, independently of the ineffectiveness claim, habeas relief is warranted on the ground that the state court failed, pursuant to *Torres*, to apply a preponderance standard at the sentencing proceeding, the Court rejects that claim. The preponderance standard enunciated in *Torres* by the Second Circuit did not constitute "clearly established" Supreme Court precedent at the time of the Appellate Division's decision and, thus, cannot provide a basis for habeas relief under AEDPA. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986) (noting that, although the preponderance standard applied by the sentencing court satisfied due process, "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all," and declining, under the circumstances of that case, to "constitutionaliz[e] burdens of proof at sentencing").

13

unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.

3. The Condition to "Stay Out of Trouble"

During the plea proceeding, the judge told petitioner that "[y]ou have to stay out of trouble between today and January 9th [the original date for sentencing]." (P. at 8.) Following petitioner's arrest and indictment, the court determined that petitioner had breached this condition. Petitioner argues that the condition was so vague as to violate due process, and, thus, was unenforceable. Therefore, according to petitioner, it was objectively unreasonable for appellate counsel not to challenge the condition on appeal. For the reasons set forth below, the Court rejects petitioner's argument.

New York courts have overwhelmingly indicated that the specific condition imposed by the court in this case provides sufficient warning to defendants that a post-plea arrest and indictment will constitute a breach of the condition. As such, the Court finds that it was not objectively unreasonable for petitioner's appellate counsel to omit from the direct appeal what was likely to be a weak claim regarding the purported vagueness of the condition.

New York courts "have repeatedly upheld the practice of imposing an enhanced sentence for breach of a plea condition that defendant 'stay out of trouble' . . . prior to sentencing," at least where the finding of a breach is based upon the defendant's post-plea arrest and indictment. *People v. Maietta*, 578 N.Y.S.2d 529, 535 (N.Y. App. Div. 1992) (Milonas, J.) (dissenting). For example, in *People v. Ruffin*, the appellate division rejected the defendant's contention that he was entitled to a hearing prior to receiving an enhanced sentence. 617 N.Y.S. 2d at 334. The defendant was released following his plea and prior to sentencing, but was "warned to stay out of trouble or the court would impose an enhanced sentence." *Id.* The appellate division affirmed the enhanced sentence imposed by the trial court when, "[a]t sentencing, the court was informed that after taking his plea the defendant had been arrested and indicted for a homicide." *Id.*

Similarly, in *People v. Seguin*, the appellate division affirmed the trial court's finding that the defendant had breached a pre-sentencing condition:

> At the time of his plea, the court promised defendant a lenient sentence but imposed a condition requiring defendant to 'stay out of trouble' while awaiting sentencing, and warned him that he would receive an enhanced sentence upon violation of that condition. However, defendant was then arrested twice. . . . We perceive no basis for reducing the sentence.

761 N.Y.S.2d 646, 647 (N.Y. App. Div. 2003); *see, e.g., People v. Akeem Omawali*, 737 N.Y.S.2d 846 (N.Y. App. Div. 2002) ("During the plea allocution . . ., the court specifically conditioned a promise of youthful offender treatment upon defendant's ability to 'stay out of trouble.' Rather than doing so, defendant was convicted of two additional felonies, arising out of separate incidents. . . . [W]e perceive no basis for a reduction of sentence."); *Coleman*, 697 N.Y.S.2d at 683 ("As a condition of his plea agreement, the defendant was warned to stay out of trouble pending sentence or the court would impose an enhanced sentence. At sentencing, the

court was informed that the defendant had been rearrested and indicted on, *inter alia*, robbery charges. We reject the defendant's contention that the court impermissibly enhanced his sentence."); *People v. Jennings*, 596 N.Y.S.2d 572, 573 (N.Y. App. Div. 1993) ("When [the sentencing court] accepted defendant's guilty plea, it specifically admonished defendant that the promised sentence would not be available if he did not stay out of trouble. His subsequent arrest constituted a breach of that condition."); *People v. Harrison*, 556 N.Y.S.2d 54, 55 (N.Y. App. Div. 1990) (affirming an enhanced sentence where the trial court determined that the defendant's post-plea arrest had breached the condition that he "keep out of trouble"); *People v. Headley*, 541 N.Y.S.2d 92, 92-93 (N.Y. App. Div. 1989) (finding that, because the defendant's post-plea arrest and indictment "violated the express conditions of the plea agreement that he stay out of trouble. . . , the court properly imposed an enhanced sentence"). Thus, in light of the overwhelming authority adverse to petitioner's claim, it was not objectively unreasonable for appellate counsel to omit a challenge to the "stay out of trouble" condition.[9] Furthermore, as to the prejudice prong of *Strickland*, even assuming *arguendo* that appellate counsel should have raised the claim, there is clearly no reasonable probability, given the large number of long-standing decisions by intermediate appellate courts rejecting the specific claim at issue here, that the claim would have succeeded before the state's highest court. This Court therefore declines to find that the state court unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.

4. Ineffective Assistance of Trial Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel based on trial counsel's failure to object to the alleged errors discussed *supra*. However, as discussed below, the Court rejects petitioner's claim regarding the effectiveness of trial counsel. Accordingly, because trial counsel was not ineffective under the standard set forth in *Strickland*, the Court finds that there were no "significant and obvious" issues regarding trial counsel's performance that were clearly stronger than the issues actually presented on appeal. Therefore, it was not objectively unreasonable for appellate counsel to omit such a claim from the direct appeal. This Court therefore declines to find that the state court unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.

C. Ineffective Assistance of Trial Counsel

The cover sheet of the instant petition presents two grounds for relief: (1) ineffective assistance of trial counsel, and (2) ineffective assistance of appellate counsel. However, in his brief, petitioner specifically states that "on this motion Desio will direct his argument to the denial of adequate counsel on appeal" but notes that "these arguments apply to the inadequacy of counsel below as well." (Pet.'s Mem. at 4.) Petitioner goes on to present arguments related solely to the ineffectiveness of appellate counsel. Furthermore, at oral argument, petitioner's counsel stated that the instant petition only presented a challenge to the performance of appellate counsel.

---

[9] The Court also notes that, at both the plea allocution and the sentencing proceeding, neither petitioner nor his counsel asked the judge to clarify the meaning of the condition or objected to the condition on the ground that it was ambiguous.

15

Accordingly, the Court could reasonably construe the instant petition as asserting a single claim regarding the ineffectiveness of appellate counsel, and not an independent claim regarding the ineffectiveness of trial counsel. Nevertheless, in an abundance of caution the Court proceeds to consider – and to reject – the claims presented by petitioner to the extent that they relate to the performance of trial counsel.

As noted above, under the standard promulgated by *Strickland*, petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of trial counsel, that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 488.

Here, for the reasons discussed *supra*, the Court finds that it was not objectively unreasonable for petitioner's trial counsel to fail to object to (1) the imposition of a sentence that comported with the reasonable and unambiguous meaning of the plea agreement entered into by petitioner, *see, e.g., Paradiso*, 689 F.2d at 31, or (2) the condition set forth at the plea proceeding that petitioner "stay out of trouble" prior to sentencing. Furthermore, as to the *Torres* issue, the Court finds that trial counsel did not err in failing to raise a claim regarding the purported hearing and evidentiary standard requirement enunciated in *Torres* because, at the time of the sentencing proceeding, *Torres* had not yet been decided. Therefore, the New York State cases preceding *Torres* cited *supra* – holding that the fact of a post-plea arrest and indictment is a "legitimate basis" for the imposition of an enhanced sentence – demonstrate that trial counsel's failure to object fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see, e.g., Daymont*, 749 N.Y.S.2d at 922; *Huffman*, 732 N.Y.S.2d 391; *Coleman*, 697 N.Y.S.2d at 683.

Moreover, even assuming *arguendo* that trial counsel's failure to object was objectively unreasonable, the Court finds that there is no reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. In light of the overwhelming legal authority adverse to petitioner's position on the issues discussed herein, the trial court would have almost certainly rejected any such objections by trial counsel. This Court therefore declines to find that the state court unreasonably applied federal law in failing to find petitioner's appellate counsel ineffective on this basis.

In sum, petitioner has failed to demonstrate that the state court's decision regarding the ineffectiveness of petitioner's counsel was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Accordingly, the habeas petition lacks merit.

III. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 3, 2007
Central Islip, New York

\* \* \*

The attorney for petitioner is J. Jeffrey Weisenfeld, Esq., 401 Broadway, Suite 306, New York, New York 10013. The attorney for respondent is Richard A. Brown, Esq., District Attorney of Queens County, by John M. Castellano, Esq., and Ellen C. Abbot, Esq., Assistant District Attorneys of Counsel.